Filed 5/19/21  P. v. Trim CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

PAUL MICHAEL TRIM,

    Defendant and Appellant.

E073626

(Super.Ct.No. RIF1804239)

OPINION

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge. Affirmed.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Paul Michael Trim broke into a home, stayed in the home for several days, and took items from the home. A jury found defendant guilty of first degree burglary (Pen. Code,[1] §§ 459, 460, subd. (a)). After the trial court found the alleged prior conviction did not constitute a strike or a serious felony, defendant was sentenced to the upper term of six years in state prison. On appeal, defendant contends (1) the trial court prejudicially erred and violated his due process right by failing to instruct the jury on trespass as a lesser included offense of burglary; and (2) the trial court erred in imposing an upper term. We reject these contentions and affirm the judgment.

**FACTUAL HISTORY**

On August 20, 2018, T.T., a visiting assistant professor in mathematics at the University of California, Riverside (UCR), leased a second-floor apartment. He then moved his personal belongings in boxes and luggage into the apartment, neatly placing the items. Later that same day, after locking the windows and doors to the apartment, he left for vacation. There were no notices posted on or around his apartment door when he left.

T.T. returned a few weeks later on September 7, 2018, and had to force his way into his apartment because the door had been blocked with boxes. When he entered the apartment, he noticed that the apartment was in disarray. He also saw a person's arm in the bathroom and the door leading to the bedroom shut. Afraid, T.T. ran away and called

---

[1] All future statutory references are to the Penal Code.

2

911.[2] While outside, T.T. did not see anyone exit the apartment, but saw that the apartment's sliding door on the back patio balcony was open.

When he returned with the manager about 20 to 30 minutes later, T.T. observed that $1,400 worth of his personal property, including his Apple and Beats headphones, an iPod Touch, a gift card, prescription glasses, expired credit cards, and a rare T-shirt were missing. T.T. noticed that several of his personal items, such as a rice cooker, shower curtain, clothing, and paper towels had been used. There were also some items in the apartment that did not belong to T.T., such as food, bedding, and paperwork. T.T. did not give defendant consent to enter his home.

UCR Police Department Officer Adams arrived at the apartment and did not find any liftable fingerprints. He also did not find any signs of forced entry on the front door, the front window, or on the back patio sliding door. However, inside the apartment, Officer Adams found an identification card bearing defendant's name and picture. Officer Adams took the identification card to a nearby shelter, showed the picture, and asked if anyone recognized the subject. The shelter manager directed Officer Adams to defendant who was present at the shelter. When Officer Adams contacted defendant, he was wearing T.T.'s rare T-shirt. Defendant explained to Officer Adams that "he was leaving the apartment," and he "grabbed it and put it on as he was leaving" the apartment. Officer Adams searched defendant's property, but did not locate any other items belonging to T.T.

---

[2] The audio recording on T.T.'s 911 call was played for the jury.

Defendant testified that he observed "fliers and notices" taped to the front door of the apartment, so he checked the door and it was unlocked. As he was homeless, and "figured nobody was staying there," defendant decided that he would move in. He asserted that he stayed in the apartment because he needed shelter, wanted to stay off the streets, and the apartment appeared to him to be unoccupied. Defendant invited other people to stay in the apartment as well. Defendant took the apartment's bedroom for himself, while the others occupied the living room. Defendant, however, claimed that when he first arrived, the apartment was already disheveled.

Defendant asserted that he did not know anything about T.T.'s missing property. He also stated he did not knowingly take anything that did not belong to him. He explained that when T.T. returned and came into the apartment, defendant asked him to give him five minutes to gather his belongings. He then quickly gathered up his belongings and did not realize he had taken T.T.'s rare T-shirt. He asserted that he did not use the rice cooker that had been in the apartment. Defendant admitted to lying to Officer Adams and acknowledged that he did not inform Officer Adams of the same story he offered to the jury at trial. Defendant explained that he had not offered his explanation of his story to Officer Adams because the officer had not asked him about his explanation. Defendant further claimed that law enforcement did not attempt to find the person identified by him as "Don" or "Dante" who was also in the apartment. Defendant had given police a physical description of this person, whom defendant claimed he could readily identify if he saw him.

4

# DISCUSSION

A.    FAILURE TO INSTRUCT ON TRESPASS

Defendant contends that the trial court prejudicially erred and violated his due process right when the court failed to instruct the jury on trespass as a lesser included offense of burglary.  We disagree.

### 1.    *ADDITIONAL BACKGROUND*

On May 15, 2019, the trial court and the parties participated in an unreported in-chambers discussion concerning jury instructions, including defendant's request that the jury be instructed as to trespass (CALCRIM No. 2932), as a lesser included offense of burglary.  On March 24, 2020, we directed the trial court to conduct a hearing for purposes of settling the appellate record.  The trial court, along with the trial attorneys, conducted that hearing on May 29, 2020.

After reviewing the record, including its notes, the trial court explained that it and the parties at trial had engaged in a discussion regarding trespassing as a lesser included offense to burglary.  The court noted that its standard practice was to rely on the legal authorities in its "CJER bench guide," as well as those provided in the CALCRIM instructions.  The court further stated that in this case, it relied on the Bench Notes to the standard CALCRIM instruction defining burglary and that the Bench Notes provided the crime of trespass was not a lesser included offense to burglary.  The court therefore followed that authority and did not instruct the jury on trespass as a lesser included offense to burglary.  The court noted further that the issue did not appear in either of the

5

parties' motions in limine and was not the subject of an Evidence Code section 402 hearing. The parties agreed that the court's recitation of events was accurate.

### 2. ANALYSIS

A trial court has a duty, even in the absence of a request, to instruct on general principles of law relevant to the issues raised by the evidence and necessary to the jury's understanding of the case. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) Included in this duty is an obligation to instruct on a lesser-included crime if substantial evidence would support a guilty verdict of that lesser included crime rather than the charged crime. (*Ibid.*; *People v. Barton* (1995) 12 Cal.4th 186, 194-198.) Instructions regarding lesser related offenses are not to be given absent the mutual assent of the parties. (*People v. Birks* (1998) 19 Cal.4th 108, 112-113 (*Birks*).) We independently review whether the trial court erred by failing to instruct on a lesser included offense. (*People v. Souza* (2012) 54 Cal.4th 90, 113.)

Here, defendant maintains the trial court was required to provide the trespass instruction because trespass was a lesser included offense of burglary and the prosecution did not object. Trespass is not a lesser included offense to the crime of burglary. (See *Birks*, *supra*, 19 Cal.4th at p. 118, fn. 8 ["It appears well settled that trespass is not a lesser necessarily included offense of burglary, because burglary, the entry of specified places with intent to steal or commit a felony (§ 459), can be perpetrated without committing any form of criminal trespass [citation]. [Citations.]"]; *People v. Taylor* (2010) 48 Cal.4th 574, 622 (*Taylor*) ["[t]respass is a lesser related crime of burglary"];

6

*People v. Foster* (2010) 50 Cal.4th 1301, 1343-1344 (*Foster*) [finding that because "trespass is a lesser related offense, not a lesser included offense, of burglary," the court had no sua sponte duty to deliver the instruction (italics omitted)].)[3] Further, trial courts may instruct on lesser related crimes only if both parties agree or one party fails to object. (See *Birks*, at pp. 112-113, 132.) To conclude otherwise would infringe on the prosecution's sole authority to decide what charges to file and would violate the separation of powers. (*Id*. at p. 134.)

In the instant matter, we disagree with defendant that the settled record clearly shows the prosecutor did not object to the giving of the trespass instruction and thus *Birks* is inapposite. Defendant requested the trespass instruction as a lesser included offense of residential burglary. The court properly denied the request. Defendant did not request the instruction as a lesser related offense, and there is no indication the prosecutor would have agreed with the request. It is likely the prosecutor did not object at the hearing to settle the record given the trial court's grasp of the issue presented and its ruling. Because the record does not show the prosecution agreed to give the jury a trespass instruction, and trespass is a lesser related crime of burglary, the trial court properly

---

[3] Both *Taylor* and *Foster* cite to *Birks*, *supra*, 19 Cal.4th 108 for the rule that trespass is not a lesser included offense of burglary. (See *Birks*, at p. 118, fn. 8.) In *Birks*, the court was applying a statutory elements test to determine if burglary was included in robbery. (*Id*. at pp. 117-118; see *People v. Shockley* (2013) 58 Cal.4th 400, 404 (*Shockley*) [" 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.' "].)

7

refused defendant's request.  We are bound to follow *Birks*.  (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Defendant nonetheless argues that the trial court here erred by not giving the trespass instruction under the "accusatory pleading" test.  Under this test, " 'if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.' "  (*Shockley*, *supra*, 58 Cal.4th at p. 404.)  To this end, defendant contends the plain language of the accusatory pleading charged him with "willfully and unlawfully enter[ing] a certain building," and, as such, he was entitled to the instruction on unlawful entry upon his request.  Defendant believes the use of the word "unlawfully" to describe his entry effectively incorporated the crime of trespass, which involves an unlawful entry without consent of the owner.  (§ 602.5.)  In other words, defendant contends trespass is a lesser included offense of burglary under the "accusatory pleading" test because of the charging language of the first amended information.  We disagree.

On the one hand, residential burglary is the entry of a dwelling with the intent to commit a felony.  (§§ 459 & 460, subd. (a).)  Criminal trespass, on the other hand, is the entry of a residence without the owner's consent.  (See § 602.5, subds. (a) & (b) [Under section 602.5, subdivision (a), "Every person other than a public officer . . . who enters or remains in any noncommercial dwelling house, apartment, or other residential place *without consent of the owner* . . . is guilty of a misdemeanor."  (Italics added.)]; see also CALCRIM No. 2932 [to be guilty of trespass, the People must prove the defendant

8

(1) willfully entered or remained in a noncommercial building belonging to someone else and that he or she (2) entered or remained without the consent of the person in lawful possession of the property].)  In the crime of burglary, it is the defendant's felonious intent, not the absence of consent or permission, that renders an entry unlawful.  (See *People v. Salemme* (1992) 2 Cal.App.4th 775, 780 [noting the " 'law . . . is that one [who enters a structure with the intent to commit petty theft or a felony] may be convicted of burglary even if he [or she] enters with consent,' " as long as he or she does not have a possessory right to enter].)

We therefore conclude the words "unlawfully enter" are not synonymous with the words "enter without consent," as defendant contends.  In short, the burglary charge in count 1 of the first amended information did not allege defendant "unlawfully" entered a building occupied by another "without the owner's consent."  Instead, count 1 alleged defendant "did willfully and unlawfully enter a certain building, to wit, an inhabited dwelling house, located at . . . , with intent to commit theft or a felony."  Under the allegations in the first amended information, it was defendant's intent to steal that made his entry unlawful, not the owner's lack of consent.

Moreover, *Birks* explained that trespass is not a lesser necessarily included offense of burglary under *either* the elements test or the accusatory pleading test, since the information in that case alleged that defendant " 'did willfully and unlawfully enter a commercial building . . . with intent to commit larceny and any felony.' " (*Birks*, *supra*,

9

19 Cal.4th at p. 118, fn. 8.) *Birks* held these allegations did not necessarily include criminal trespass. (*Ibid*.)

Defendant relies on *People v. Waidla* (2000) 22 Cal.4th 690 (*Waidla*) to support his argument. However, *Waidla* did not overrule *Birks* but merely assumed "[f]or purposes of discussion only" that trespass was a lesser included offense to burglary under the accusatory pleading test. (*Waidla*, at p. 733.) The California Supreme Court's later decisions in *Taylor* and *Foster* make clear that *Waidla*'s hypothetical discussion was just that. And, the Supreme Court reaffirmed its holding in *Birks* that trespass is not a lesser included offense of residential burglary. (See *Taylor*, *supra*, 48 Cal.4th at p. 622.)

We also reject defendant's contention that the failure to give the requested trespass instruction violated his due process rights by denying him adequate instructions on his defense theory. " '[T]here is no federal constitutional right of a defendant to compel the giving of lesser-related-offense instructions. [Citation.]' [Citation.] *Regardless of defendant's legal and factual theories concerning how his conduct may have constituted trespass, that potential crime nonetheless remains at most a lesser offense related to (but not included in) the offense of burglary.*" (*Foster*, *supra*, 50 Cal.4th at pp. 1343-1344, italics added.)

Because the first amended information did not allege a trespass under the accusatory pleading test, the trial court was not required to instruct on trespass as a lesser included offense of burglary. (See *Birks*, *supra*, 19 Cal.4th at p. 118, fn. 8.) In summary, the trial court did not err in refusing to give the trespass instruction.

10

B.      UPPER TERM SENTENCE

Defendant also contends that the trial court abused its discretion in imposing the upper term of six years for his burglary conviction when it weighed the aggravating and mitigating factors and disagreed with the probation officer's conclusions and recommendation of a low term. He adds that the issue is not forfeited, and if it is, his trial counsel's failure to object to the upper term constituted ineffective assistance of counsel.

1.      *ADDITIONAL BACKGROUND*

In imposing the upper term, the court relied on four aggravating factors: defendant's criminal history, the criminal sophistication employed in the instant crime, the victim's vulnerability, and the loss or damage done to the victim's property. The court disagreed with the probation officer's conclusion that "[t]he defendant has no prior record, or has an insignificant record of criminal conduct, considering the recency and frequency of prior crimes." The court also disagreed with the probation officer's finding that defendant "exercised caution to avoid harm to persons or damage to property, or the amounts of money or property taken were deliberately small, or no harm was done or threatened against the victim." The court found that defendant could readily have concluded that someone was living there, and that the victim's property was damaged and stolen. The court also noted that defendant had furthermore allowed other people entry into the property. The court further disagreed with the probation officer's conclusion that defendant "was motivated by a desire to provide necessities for his . . . family or [him]self," finding it "a stretch." The court agreed that defendant was looking for shelter

11

but noted that many others do without committing residential burglaries. The court found that there were no circumstances in mitigation.

2. *ANALYSIS*

Preliminarily, the People respond that defendant's trial counsel forfeited this contention by failing to object. We disagree. Defense counsel properly preserved the issue by pointing to the circumstances in mitigation and requesting the low term of two years at the sentencing hearing. (See *People v. Jones* (2009) 178 Cal.App.4th 853, 859.)

A trial court's decision to impose the upper term is subject to review for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*).) A trial court abuses its discretion only if it "relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*) An upper term sentence may be based upon "any aggravating circumstance that the court deems significant" and " 'reasonably related to the decision being made.' " (*Id*. at p. 848, quoting Cal. Rules of Court, rule 4.408(a).) In determining " 'whether there are circumstances that justify imposition of the upper or lower term,' " the trial court may consider, among other things, "the record of the trial, the probation officer's report, and statements submitted by the defendant, the prosecutor, and the victim or victim's family. (§ 1170, subd. (b).)" (*Sandoval*, at p. 848.) " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a

12

particular sentence will not be set aside on review.' " (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.)

Further, we review the record only for substantial evidence supporting the aggravating factors relied upon by the trial court to support its sentencing decision. "Under the DSL [determinate sentencing law], a trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions. (See, e.g., Cal. Rules of Court, rule 4.420(c) [fact underlying an enhancement may not be used to impose the upper term unless the court strikes the enhancement]; *id*., rule 4.420(d) [fact that is an element of the crime may not be used to impose the upper term]." (*Sandoval*, *supra*, 41 Cal.4th at p. 848.) We also keep in mind that just one valid aggravating factor will justify imposition of an upper term. (*People v. Black* (2007) 41 Cal.4th 799, 815; see *People v. Brown* (2000) 83 Cal.App.4th 1037, 1043 ["a single factor in aggravation is sufficient to justify a sentencing choice"].) In addition, a trial court may disregard mitigating factors without stating its reasons. (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258.)

Here, we first conclude the record on appeal is sufficient to support the aggravating factors relied upon by the trial court to justify imposition of the upper term. We also find that the trial court properly considered all of the relevant mitigating and aggravating factors before imposing the upper term. In support of its upper term sentencing choice, as noted above, the court cited defendant's violent criminal history, victim vulnerability, criminal sophistication, and loss or damage of property of value.

The court reasoned that the facts demonstrated defendant had targeted homes that were vulnerable to his entry and then he permitted "other people to come in there and again sort of ransack this guy's house." The court also noted that the victim's "place got ripped off," and "[h]is property was damaged."

Defendant disagrees with the trial court's evaluation of the aggravating and mitigating factors, noting the aggravating circumstances cited by the court were weak. We disagree. As stated by the court, defendant "staked out" the apartment, specifically looking for doors that had fliers attached and which indicated to defendant as an easy target. This citation supports a finding of "planning, sophistication, or professionalism." (Cal. Rules of Court, rule 4.421(a)(8).) Regarding the victim's vulnerability, the victim was absent, such that his possessions and home were vulnerable, and defendant was present in the home when the victim returned. (Cal. Rules of Court, rule 4.421 (a)(3).) As to property damage, as noted by the court, defendant "allowed [] other people to come in there and again sort of ransack this guy's house." And, as the victim testified, $1,400 worth of his personal property was missing. Finally, the record shows that defendant had a history of past violent conduct. In 2008, he was convicted of aggravated battery in Florida.

On this record, we simply cannot conclude the trial court acted arbitrarily or irrationally by imposing the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 728.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.